UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARVIN F.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 1:18-cv-02029-DML-TWP ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Marvin applied in February 2015 for Disability Insurance Benefits and in April 2015 for Supplemental Security Income disability benefits under Titles II and XVI, respectively, of the Social Security Act. Marvin's applications alleged that he had become disabled as of May 2012, but he later amended his onset date to December 1, 2013. (R. 275). Acting for the Commissioner following a hearing on April 4, 2017, administrative law judge T. Whitaker issued a decision on August 17, 2017, that Marvin is not disabled. The Appeals Council denied review of the ALJ's decision on May 4, 2018, rendering the ALJ's decision for the Commissioner final.

---

[1] To protect privacy interests of claimants for Social Security benefits and consistent with a recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by his first name.

Marvin timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Marvin contends that the ALJ erred in three respects. He asserts that the ALJ did not (1) properly account in the RFC for the effects of his impairments on his mental abilities to concentrate, persist, and maintain pace, (2) properly evaluate the opinions of his treating physician, Dr. Means, regarding his functional abilities, and (3) properly evaluate statements in a disability report made by a friend regarding Marvin's functioning.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Marvin's assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Marvin is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented

these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his vocational profile (age, work experience, and education) and RFC; if so, then he is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the

evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Marvin was born in 1975, was 38 years old at his alleged onset date of disability in December 2013, and was 42 years old at the time of the ALJ's decision. Marvin had a steady work history until May 2012, when he stopped working after he was involved in a car accident. He had worked as a short order cook and in a cafeteria.

At step one, the ALJ found Marvin had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ identified the following as severe impairments: (1) degenerative disc disease of the lumbar spine with chronic low back pain and left leg radiculopathy and (2) borderline intellectual functioning. (R. 16). Marvin does not challenge the ALJ's determinations at steps one through three.

The ALJ next determined Marvin's residual functional capacity (RFC) for purposes of conducting the required analysis at steps four and five. She restricted Marvin to light work (sitting for 6 hours and standing or walking for 6 hours, and lifting/carrying/pushing/pulling 10 pounds frequently and 20 pounds occasionally). His postural abilities (balancing, kneeling, crouching, climbing ramps/stairs, and stooping) were limited to occasionally. Repetitive stooping below the waist, climbing ladders/ropes/scaffolds, and exposure to unprotected heights and dangerous

5

machinery were forbidden. As for mental abilities, the ALJ limited Marvin to "simple, routine, tangible, and repetitive unskilled work" in a "work environment free of fast-paced production requirements." (R. 19).

At step four, the ALJ determined, based on the opinion of a vocational expert, that Marvin is capable of performing his past relevant work as a Cafeteria Attendant. She thus determined at step four that Marvin is not disabled. The ALJ also made alternative findings at step five. Based on the VE's testimony and considering Marvin's RFC and vocational profile, the ALJ decided that there exists other work available in significant numbers in the national economy that Marvin can perform: Sorter, Nuts and Bolts Assembler, and Bench Assembler. Accordingly, she found at step five that Marvin is not disabled.

## II. <u>Marvin's Assertions of Error</u>

Marvin raises three errors: that his moderate difficulties with concentration, persistence, and pace were not properly accounted for in the RFC, that the opinions of his treating physician were not properly evaluated, and that his friend's observations about his functional limitations were not adequately evaluated.

The court addresses these arguments in turn below.

### A. The ALJ's mental functioning restrictions related to concentration, persistence, and pace are not supported by substantial evidence.

Marvin asserts that the ALJ's restriction to "simple, routine, tangible, and repetitive unskilled work" in a "work environment free of fast-paced production

6

requirements" does not account for Marvin's difficulties with concentration, persistence, and pace. As explained below, the court agrees.

An ALJ's RFC (and hypothetical to a vocational expert) must include all of the claimant's limitations supported by the record, including limitations in concentration, persistence, and pace ("CPP"). *Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019). The ALJ must ensure that the VE "is fully apprised" of the claimant's particular difficulties so that the ALJ can ensure that the VE has excluded jobs that the claimant is not able to perform. *Id.* In numerous cases, starting primarily with *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010), followed by *Yurt v. Colvin,* 758 F.3d 850, 859 (7th Cir. 2014), reaffirmed in *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015), and again reaffirmed this year in *Decamp v. Berryhill,* 916 F.3d 671, 675-76 (7th Cir. Feb. 26, 2019), *Winsted v. Berryhill,* 923 F.3d 472, 477-78 (7th Cir. April 3, 2019), and *Crump,* 932 F.3d at 570 (7th Cir. July 31, 2019), the Seventh Circuit has explained that a restriction to simple, routine, and repetitive (or unskilled) work will not in *most* cases account for a claimant's difficulties with CPP. As summarized in *Winsted*:

> We have also made clear that in most cases "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace," and thus, alone, are insufficient to present the claimant's limitations in this area.

923 F.3d at 477.

7

Marvin contends that this wealth of case law requires the court to reverse and remand the Commissioner's decision because of the absence of a tie between Marvin's limitations with CPP and the ALJ's limitation to unskilled work in an environment free of past-paced production requirements. The Commissioner counters that the logical tie between Marvin's CPP limitations and the mental restrictions in the RFC (and hypothetical to the VE) are supplied by medical opinions of the state agency reviewing physicians, which the ALJ relied on, at least in part. There are cases in which an ALJ's reasonable reliance on an opinion of a medical expert "who translates findings [of moderate limitations with CPP]" into an RFC determination supplies substantial evidentiary support. *See Burmester v. Berryhill,* 920 F.3d 507, 511 (7th Cir. 2019). But if the ALJ is relying on a medical expert opinion, she must ensure that all of the claimant's limitations with CPP are accounted for in the RFC and hypothetical to the VE. *DeCamp,* 916 F.3d at 676.

In this case, the ALJ's limitation to unskilled work without fast-paced production *did not* ensure that the VE excluded jobs that Marvin cannot perform.

First, the reviewing physicians' opinions regarding Marvin's mental work capacity were based on his intellectual disability, the impairment they found was Marvin's primary, severe impairment. (*See, e.g.,* R. 121). They noted that Marvin's full-scale IQ was 78 (tested in high school when he was 18) and opined that Marvin "can understand, remember, and carry-out unskilled tasks without special considerations in *many work* environments. [H]e can attend to task for sufficient periods of time to complete tasks [and] can manage the stresses involved with

8

unskilled work." (R. 126; emphasis added). The reviewing physicians did not otherwise indicate the type of work environments—even if unskilled—that were not appropriate for Marvin and, importantly, they did not otherwise discuss Marvin's severe learning disabilities with reading, spelling, and math. Nor did the ALJ.

The reviewing physicians and the ALJ failed to address Marvin's high school records. Those records show that Marvin had been in special education for "mildly mentally handicapped students" since the first grade. (R. 280, 288). At age 19, when Marvin was a senior in high school, his reading and spelling capabilities were measured at less than a 3rd grade level and his math capabilities were measured at around a 5th grade level—he was capable of performing simple addition, subtraction, and multiplication problems but could not perform division problems. (R. 278, 290-91). While the ALJ emphasized that Marvin had a high school education, the record establishes that Marvin's high school bestowed a high school diploma when he was nearly 20 years old but without bestowing an actual high school education. His courses during senior year were advanced physical education, photography, psychology, and advanced art. (R. 279).

The VE was not apprised about Marvin's borderline intellectual functioning, his history of special education throughout his school years, from first to 12th grade, his severe difficulties with reading, spelling, and math, or his "high school" education being a mischaracterization of his actual educational attainment.[2] The

---

[2] Instead of acknowledging the records from Marvin's high school documenting his special education, reading and spelling below a third grade level, and math at a fifth grade level but with the ability only to do simple addition, subtraction, and

9

absence of that information may be one reason that jobs the VE opined that Marvin can perform are, in fact, inconsistent with his abilities and *even* with some of the ALJ's RFC limitations. The disconnect between the jobs and the evidence of Marvin's particular limitations convince the court that the ALJ's limitation to unskilled work without a fast-paced production environment did not adequately capture Marvin's difficulties with CPP.

The ALJ decided at step four that Marvin could do his past relevant work as a "Cafeteria Attendant" (DOT #311.677-010), but that job—according to the Dictionary of Occupational Titles—requires a "Reasoning Development" level of 2 (or "R2"), which requires the ability "to carry out detailed but uninvolved written or oral instructions." The state agency reviewing physicians opined, however, that Marvin was moderately limited in his ability to "understand and remember detailed instructions" and "carry out detailed instructions." (R. 124). In addition, according to the ALJ's opinion, Marvin last performed the cafeteria job in 2002, more than 15

---

multiplication problems, the ALJ emphasized, over and over, Marvin's testimony that in 2015 or 2016 he took college courses studying drafting at ITT and got "mostly As and Bs." The ALJ did not ask Marvin anything about the classes he took. There is no evidence he had any education or job training or experience that would have dramatically improved his math, spelling, and reading capabilities beyond what he had attained in high school. And he explained to the consultative psychologist in 2015 that he does struggle with reading and spelling and "in terms of math, he can add and subtract but 'needs practice' with multiplication." While the ALJ apparently assumed that ITT offered to Marvin a substantive and quality educational experience (ITT is now defunct and in bankruptcy), she was required to address the overwhelming objective and documented evidence of Marvin's lower intellectual functioning. An ALJ cannot ignore a line of evidence that undermines her conclusions. *See Arnett,* 676 F.3d 586, 592 (7th Cir. 2002).

years before the ALJ issued her decision and, thus, it was not "past relevant work" under SSA regulations. 20 C.F.R. § 404.1560(b)(1).

The jobs the ALJ determined, alternatively, at step five that Marvin could perform also cause the court to conclude that the VE was not sufficiently apprised of Marvin's particular limitations with CPP. For example, the VE opined (and the ALJ found) that Marvin could work as a Sorter (DOT #222.687-014), but that job—according to the DOT—requires a Reasoning Development level of 2 (the ability to carry out detailed but uninvolved written or oral instructions) and a Mathematical Development level of 2 (which requires, among other things, the ability to perform addition, subtraction, multiplication, and division "with like common and decimal fractions"). The VE also opined (and the ALJ found) that Marvin could work as a Bench Assembler (DOT #706.684-022), but that job—according to the DOT—requires work on an assembly line, and the ALJ restricted Marvin from a "fast-paced production" work environment.

For these reasons, the court finds that this is one of the "most cases" where the ALJ's use of language in his RFC and hypothetical to the VE limiting Marvin to unskilled tasks did not "necessarily exclude" from the VE's consideration jobs that Marvin cannot perform consistent with his particular limitations in CPP. On this ground alone, the court must therefore reverse and remand the Commissioner's decision that Marvin was not disabled between his alleged onset date and the date of the ALJ's decision.

### B. Other alleged errors can be addressed on remand.

Marvin raises two other errors, both of which can be addressed on remand. The court provides a few comments, however.

Marvin asserts that the ALJ did not properly evaluate the opinion of his treating physician, Dr. Means. Dr. Means treated Marvin for years because of his complaints of back pain. Among other things, Dr. Means opined that the pain Marvin experiences will cause him to be off task 33% of a work day and to be absent from work about four days per month. (R. 828). He also stated that a cane is medically necessary. (R. 829). While the ALJ provided *some* sound reasons for rejecting Dr. Means's opinions, it does not appear that she evaluated Dr. Means's opinions in light of the length of the treating relationship, the regularity with which Dr. Means saw Marvin (particularly in latter years), and the increasing level of treatment he ordered for Marvin's back impairment and pain. The ALJ also overstated the level of Martin's activities (going to school twice a week for a period and searching for *part-time* work) when she evaluated Dr. Means's opinion as not worthy of weight. Moreover, Marvin underwent new imaging (an MRI in 2015) and treatment (an epidural steroid injection in 2016, R. 765, which the ALJ did not acknowledge) that occurred after the state agency reviewing physicians issued their opinions. The MRI, which documented some nerve root impingement, should be reviewed by an expert on remand. *See, e.g., Kaminski v. Berryhill,* 894 F.3d 870, 875 (7th Cir. 2018) (ALJs must reply on expert opinions about the significance of medical findings).

Finally, Marvin asserts that the ALJ did not properly analyze a statement by one of his friends, Ms. Glover, about Marvin's activities she has observed. The court finds no error here. As the ALJ found, Ms. Glover's statements were consistent with how Marvin described his own activities and functioning, and there is no contention that the ALJ inappropriately analyzed Marvin's statements about his activities and functioning.

## **Conclusion**

For the foregoing reasons, the court REVERSES and REMANDS under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Marvin was not disabled.

So ORDERED.

Dated: September 30, 2019

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system